**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 1:17CR00009 |
| vs. | : | |
| BRUCE FELIX, | : | Judge Black |
| Defendant. | : | |

**REPLY TO GOVERNMENT RESPONSE**
**ON MOTION FOR BOND**

Now comes the Defendant, Bruce Felix, by and through counsel, and hereby files this reply to the government's response to his motion for bond. (R.36, Government Response, PAGE ID #355-364).

On July 6, 2018, Mr. Felix filed a Motion to Dismiss Based on a Speedy Trial Violation. (R.33, Speedy Trial Motion, PAGE ID #343-349). Rather than file a written response to that motion, the government chose to outline its position on Speedy Trial in its response to Mr. Felix's request for bond. For the reasons stated herein, as well as those advanced in his original filing, Mr. Felix renews his motion to dismiss and submits that any dismissal must be with prejudice. Further, he avers, that short of a dismissal, his release is mandatory pursuant to 18 U.S.C. § 3164.

**I.    The Speedy Trial Clock has indisputably expired.**

Despite telling undersigned counsel that its motion for a status conference was not intended to toll the speedy trial clock, the government advances, in its response to the motion for bond, that the motions for status did just that. (R.36, Government Response, PAGE ID #358). In so arguing, the government asks the Court to find that the speedy trial clock was not violated and that Mr. Felix's continued detention is warranted. While the government's position provides a convenient

1

mechanism whereby the Court could sidestep the requirements of the Speedy Trial Act, this Court should refrain from doing so. A close examination of both the case law and this Court's own procedural rules shows that the government's motions for status were not motions within the meaning of 18 U.S.C. § 3161(h)(7)(A), and therefore could not provide a basis to toll the speedy trial clock. Any finding to the contrary by this Court would undoubtedly frustrate the purposes of the Speedy Trial Act.

To properly analyze the underlying issue, the defense would note that the government has taken inconsistent positions on the nature/purpose of the status motions that were filed. In a conversation with undersigned counsel, the government first said that the motions were not filed to toll speedy trial but were meant to alert the court of impending speedy trial issues. In contrast, in the government's written response, it argued that the motions were continuance motions and as such should the toll speedy trial clock. By assuming divergent positions on the matter, the government has highlighted the inherent problem with its argument. If the motions for a status conference are not continuance motions, the speedy trial clock expired and Mr. Felix is now entitled to a dismissal. However, if the status motions are continuance motions, they were filed solely for the purpose of delay and thereby violate the spirit of the Speedy Trial Act. *See*, 18 U.S.C. § 3162(b)(2).

### A. The status motions are not motions for a continuance.

To credit the government's argument, this Court would have to construe the status motions as motions for a continuance. The record does not support that interpretation. In addition to the government's verbal representations to undersigned counsel, the Court need look no further than the language of the motions themselves to realize they do not constitute proper continuance motions. Per the Standing Trial Procedure Order of this Court, any motion for a continuance must

be made at least 10 days prior to trial and "shall set forth those factors listed in [the Speedy Trial Act] which the movant contends support the motion." Here, the motions do not conform with the Court's requirements for continuance motions, as they proffer no factors under 18 U.S.C. § 3161(h)(7)(B). Rather, they simply inform the Court about speedy trial issues and motions that remain outstanding. (R.32, First Motion for Status, PAGE ID #341) and (R.34, Second Motion for Status, PAGE ID #350). Because the motions are not continuance motions, they cannot toll speedy trial, and thus the government's argument to the contrary must fail.

**B. Even if the Court views the status motions as continuance motions, the Speedy Trial Act was still violated because they were filed solely for the purpose of delay.**

However, should the Court find that the motions constituted proper continuance motions, a violation of the Speedy Trial Act still occurred because the motions were pretextual and filed solely for the purpose of delay. *See*, *United States v. Richardson*, 421 F.3d 17, 28 (1st Cir. 2005) (distinguishing between pretextual and legitimate motions for a continuance). The Sixth Circuit has very clearly criticized actions that "merely pay lip service to the requirements of the Speedy Trial Act." *United States v. Brown*, 819 F.3d 800, 815 (6th Cir. 2016). In *Brown*, the Court vacated a conviction and remanded the case for dismissal after finding the district court engaged in actions that "evaded the spirit of the Speedy Trial Act." *Id.* at 818.

By asking this Court to find no violation of the Speedy Trial Act, the government has requested the Court pay "lip service" to the Act's requirements, as the status motions served no purpose other than delaying the expiration of the clock. Such a holding would be contradictory to the precedent of the Sixth Circuit and would unquestionably evade the spirit of the Speedy Trial Act. "If the government could extend the seventy-day period merely by filing a request to set a trial date, or if the court could ignore its obligation to set a timely trial date, there would be nothing left of the requirements of § 3161(h)(8) and no teeth in the Speedy Trial Act as a whole." *United*

3

*States v. Brown*, 285 F.3d 959, 962 (11th Cir. 2002).[1] *See also*, *Richardson*, 421 F.3d at 29 ("The statutory grounds for exclusion of time from the speedy trial clock 'are designed to take account of specific and recurring periods of delay which often occur in criminal cases; they are not to be used either to undermine the limits established by the Act, or to subvert the very purpose the Act was designed to fulfill.'" (quoting *Henderson v. United States*, 476 U.S. 321, 333 (1986) (White, J., dissenting))).

While at first glance, the government's argument might seem compelling, a close analysis reveals that adopting it would lead to a blatant violation of the Speedy Trial Act. Therefore, the Court should reject the government's position outright and find that Mr. Felix's speedy trial rights were violated.[2] Further, the Court should order a dismissal of the indictment with prejudice.

## II.     A dismissal of the indictment in this matter must be with prejudice.

The government has correctly identified the factors this Court must consider in deciding whether a dismissal with our without prejudice is warranted. (R.36, Government Response, PAGE ID #359). Those factors include: (1) the seriousness of the offense, (2) the facts and circumstances that led to the dismissal, and (3) the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice. *United States v. Moss*, 217 F.3d 426 (6th Cir. 2000).

Mr. Felix agrees with the government that the charged offenses are serious and concedes that this factor favors a dismissal without prejudice.[3] *Id.* at 431. However, contrary to the government's position, the final two factors warrant a dismissal with prejudice.

---

[1] A close reading of the Eleventh Circuit's decision in *Brown* is encouraged, as the motions at issue in that case are identical to the ones underlying this matter. *See*, *United States v. Brown*, 285 F.3d 959 (11th Cir. 2002).
[2] When Mr. Felix filed his Motion to Dismiss based on a speedy trial violation, 72 days had passed on the clock. To date, an additional 104 days have passed, thus placing this case 106 days over the requisite 70-day period.
[3] Notably, Mr. Felix does not agree that he was the person who committed the acts alleged by the government. (R.36, Government Response, PAGE ID #359) (the government submits that "the Defendant brandished a firearm…" etc.).

In analyzing the second factor, the government focuses primarily on its own actions leading up to the dismissal.[4]  While government negligence is one factor that calls for a dismissal with prejudice, the Sixth Circuit also recognizes delay caused by the court as a legitimate consideration. *Id.* at 431.  In *Moss*, a ripe motion to suppress was under advisement for approximately one year before the defendant filed a motion to dismiss the indictment with prejudice under the Speedy Trial Act.  *Id.* at 429.  In holding that the case should have been dismissed with prejudice, the Sixth Circuit emphasized the role the court played in causing the delay.  In fact, while the opinion was a unanimous published decision, two of the judges wrote separately to address the seriousness of the court's inactivity.  *See*, *Id.* at 432 (Batchelder, J., concurring) ("… the true error lies with the district court which, inexplicably, allowed Moss' motion to suppress to languish unanswered on the docket for many months in clear violation of the Speedy Trial Act."); *see also*, *Id.* at 436 ("… I believe the indictment must be dismissed with prejudice because there is no conceivable justification for the district court's complete inactivity while Moss's motion to suppress was under advisement, and because it clearly appears to have been the result of 'precisely the sort of administrative neglect which the Speedy Trial Act was intended to discourage and sanction'" (quoting *United States v. Angelini*, 553 F. Supp. 367, 369 (D. Mass. 1982))).

In this case, two filed motions to suppress were ripe for decision as of April 16, 2018.  After excluding the requisite 30 days, under 18 U.S.C. § 3161(h)(1)(H), a ruling from the Court should have issued by May 17, 2018.  To date (154 days later), those motions remain pending.  Additionally, the government requested a status conference prior to the expiration of the speedy trial clock so that the case could be set for trial.  Seemingly, that request was ignored, as the Court

---

[4] The government also highlights the actions of the defendant in causing the delay. (R.36, Government Response, PAGE ID #360).  Mr. Felix recognizes that this is also a proper consideration in the analysis.  However, he already excluded from his calculation of the 70 days, the delay attributable to the defense. (R.33, Speedy Trial Motion, PAGE ID #345-346).  Therefore, the entire time exceeding the allotted 70 day period cannot be attributed to the defense.

5

failed to set a status conference or address the reasons for its failure to do so. Moreover, a trial date has not been scheduled in this matter.

While the government does not outline the Court's role in causing the delay, it does recognize the Sixth Circuit precedent, which holds that "'protracted and inexcusable period[s] of inactivity' may warrant dismissal with prejudice in some cases." (R.36, Government Response, PAGE ID #362-363) (referencing *United States v. Howard*, 218 F.3d 556, 561 (6th Cir. 2000) and *Moss*, 217 F.3d at 431-32)). Further, it avers that the "delay in resolving [the pretrial] motions *does* appear to be overlong." (R.36, Government Response, PAGE ID #363) (emphasis supplied). Thus, while the government might not have been negligent in causing the delay, it certainly recognizes that inexcusable delay has occurred in this case and per Sixth Circuit precedent warrants a dismissal with prejudice.

In assessing the third factor, the government concedes that Mr. Felix's continued incarceration constitutes non-trial prejudice that, per Sixth Circuit precedent, could result in a dismissal with prejudice. (R.36, Government Response, PAGE ID #361). As recognized in *Moss*, "[I]nordinate delay between public charge and trial, … may 'seriously interfere with the defendant's liberty, whether he is free on bail or not, and … may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." *Moss*, 217 F.3d at 432 (citing *United States v. Taylor*, 487 U.S. 326, 340 (1988)).

Clearly, Mr. Felix has suffered this type of prejudice, having been incarcerated a total of 619 days. During this period of confinement, Mr. Felix has been unable to work and provide support for his family. At the time of his arrest, Mr. Felix had just secured his commercial driver's

license and was working for a trucking company in Hamilton, Ohio. His boss, upon learning about the arrest, told Mr. Felix that he could return to work as soon as he was released from custody.

In addition to disrupting his employment, Mr. Felix's incarceration has caused significant strain on his personal relationships. To that end, Mr. Felix lost his girlfriend (the love of his life), his dog, and regular communication with his family. As the Court is aware, at the Butler County Jail, there are no contact visits with relatives or friends. All communication occurs through a video screen with telephones. Therefore, Mr. Felix has had only four "personal visits" during his entire period of incarceration. Similarly, telephone communication is limited, as calls are expensive, and conversations are restricted to 15 minutes at a time. Having been incarcerated for almost two years, Mr. Felix has missed birthdays, holidays, and the birth of his only grandchild. Such losses are immeasurable.

Importantly, in addition to the strain placed on Mr. Felix's family, the conditions at the Butler County Jail are oppressive. There is no access to natural light (all windows are frosted), the cells are overly small and shared by two inmates, and when permitted to leave the cell, an inmate can go no further than the confines of the pod.[5] In fact, in the past couple of years, Mr. Felix has only left the jail four times (three times for court hearings and once to see the eye doctor).

In addition to non-trial prejudice, Mr. Felix also suffered trial prejudice because a critical defense witness went missing. *See*, *United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999) (substantial prejudice is "commonly demonstrated by… the unavailability of a key witness"). At trial, Mr. Felix intended to call Amber Jefferson to testify on his behalf. Ms. Jefferson's testimony would have corroborated that Mr. Felix had no ill-gotten gains at the time of the robberies. Additionally, she would have called into question the credibility of one of the government's

---

[5] After interviewing countless inmates over the years, the description of conditions at the Butler County Jail has been consistent with the above narrative.

7

primary witnesses. While the defense previously had good contact with Ms. Jefferson, recent efforts to locate her have proven unsuccessful. Because Ms. Jefferson is a necessary defense witness, her loss constitutes actual prejudice to Mr. Felix.

In addition to the prejudice suffered by Mr. Felix, the inordinate delay in this case has notably hindered the administration of justice. As the Sixth Circuit recognized in *Moss*, "[w]henever the government-for whatever reason-falls short of meeting the Act's requirements, the administration of justice is adversely affected." *Moss*, 217 F.3d at 432 (citing *United States v. Ramirez*, 973 F.2d 36, 39 (1st Cir. 1992) (quoting *United States v. Hastings*, 847 F.2d 920, 926 (1st Cir. 1988)). Here, the public interest in bringing prompt criminal proceedings has been thwarted by the delay in the start of Mr. Felix's trial.

In sum, contrary to the government's arguments in support of a dismissal without prejudice, the facts of this case make clear that the only appropriate remedy is a dismissal with prejudice.

### III. **Short of a dismissal with prejudice, Mr. Felix must be released on bond.**

In arguing against Mr. Felix's release on bond, the government focuses on factors enumerated under the Bail Reform Act, or 18 U.S.C. § 3142 (i.e., risk of flight and danger to the community). Mr. Felix, however, did not move for bond pursuant to that statute. Rather, he moved for bond under 18 U.S.C. § 3164, which does not take into account the same factors as the Bail Reform Act.

Unlike 18 U.S.C. § 3142, which makes the issuance of bond discretionary (after the consideration of certain factors), 18 U.S.C. § 3164 *mandates* bond when a pretrial detainee, who is held solely because of the instant offense, has been in custody over 90 days. 18 U.S.C. § 3164(c). On the date that Mr. Felix filed the motion for bond, his detention had exceeded the 90-day period by 58 days. (R.35, Motion for Bond, PAGE ID #353). To date, an additional 28 days have passed,

thereby totaling 86 days in excess of the requisite 90 days.  Per statute, Mr. Felix must be released on bond and the government's arguments to the contrary are wholly inapplicable in the context of a motion under 18 U.S.C. § 3164.

### IV. Conclusion.

WHEREFORE, for the reasons stated herein, as well as those advanced in Mr. Felix's original filings, Mr. Felix moves for a dismissal of the indictment with prejudice, or alternatively, for an Order requiring his immediate release from the Butler County Jail.

Respectfully submitted,

DEBORAH WILLIAMS
FEDERAL PUBLIC DEFENDER

*/s/ Zenaida R. Lockard*
Zenaida R. Lockard (KY 93402)
Assistant Federal Public Defender
250 E. 5th Street, Suite 350
Cincinnati, Ohio 45202
(513) 929-4834

Attorney for Defendant
Bruce Felix

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the Defendant's Reply was served electronically upon Anthony Springer, Assistant United States Attorney, Office of the United States Attorney, 221 E. Fourth St., Suite 400, Cincinnati, Ohio 45202, via Electronic Case Filing, on this 18th day of October, 2018.

*/s/ Zenaida R. Lockard*
Zenaida R. Lockard