# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:17-cr-009 |
| | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| BRUCE LEE FELIX, | : | |
| | : | |
| Defendant. | : | |

## ORDER:
### (1) DENYING MOTION TO DISMISS UNDER THE SPEEDY TRIAL ACT;
### (2) DENYING MOTION FOR BOND; AND
### (3) DENYING MOTION TO DISMISS UNDER THE SIXTH AMENDMENT

This criminal case is before the Court on Defendant's motion to dismiss under the Speedy Trial Act (Doc. 33), motion for bond (Doc. 35), motion to dismiss under the Sixth Amendment (Doc. 39), and the parties' responsive memoranda (Docs. 36, 38, 40, 41).

## I. BACKGROUND

On January 18, 2017, Defendant Bruce Lee Felix was charged in a three-count indictment with: bank robbery, in violation of 18 U.S.C. § 2113(a) (Count 1); armed bank robbery, in violation of 18 U.S.C. § 2113(a), (d) (Count 2); and using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 3). (Doc. 1).

As charged, Counts 1 and 2 carry terms of imprisonment up to twenty and twenty-five years, respectively. 18 U.S.C. § 2113(a), (d). Additionally, Count 3 carries a mandatory minimum of seven years imprisonment up to life, which term is required to run consecutive to any other term of imprisonment. 18 U.S.C. § 924(c)(1)(A).

Defendant's initial appearance was held on February 6, 2017. (Doc. 6). At that time, the Government moved for Defendant's detention pending trial and, accordingly, the case was scheduled for a detention hearing. (*Id*.)

Defendant's detention hearing and arraignment were held on February 9, 2017, at which time Defendant was ordered detained pending trial. (Docs. 10, 12). The following day, on February 10, 2017, this Court held Defendant's preliminary pretrial conference and established a trial calendar. (Doc. 13). Excluding the day of the initial appearance, the period of time from the Government's motion for detention until the detention hearing, the day of the detention hearing and arraignment, and the day of the preliminary pretrial conference, the first day on the speedy trial clock ran on February 11, 2017. *See* 18 U.S.C. § 3161(c)(1), (h)(1), (h)(1)(D).

On March 3, 2017, the Court held a status conference by telephone, during which Defendant made an oral motion to continue the previously established trial setting and waive speedy trial time. (Min. Entry & Not. Order, Mar. 3, 2017). In moving for a continuance, defense counsel specifically cited the need for additional time to adequately prepare, given the voluminous discovery and the anticipated supplemental discovery. (*Id*.) The Court granted the requested continuance and made an ends-of-justice finding, tolling time until the new trial date of June 12, 2017. (*Id*.)

On May 1, 2017, the Court held another status conference, during which the Court was advised that Defendant required another continuance and a further extension until June 16, 2017 to file pretrial motions. (Min. Entry & Not. Order, May 2, 2017). The Court again granted the requested continuance and made an ends-of-justice finding,

tolling time until the new motion deadline of June 16, 2017. (*Id.*) Given Defendant's need for additional time and his intent to file pretrial motions, the Court also vacated the June 12, 2017 trial date. (*Id.*)

On June 16, 2017, Defendant filed a motion to suppress pretrial identifications (Doc. 15) and a motion to suppress evidence (Doc. 16). Additionally, the Government filed a motion to admit Rule 404(b) evidence. (Doc. 17). The motions were preliminarily briefed, after which Defendant's two motions were set for hearing.[1]

The hearing on Defendant's motion to suppress evidence (Doc. 16) was held on January 19, 2018 (Min. Entry & Not. Order, Jan. 19, 2018).[2] After the transcript was made available (Doc. 23), and after the Court granted Defendant's two requests for extensions of time (Not. Orders, Feb. 13, 2018 & Mar. 5, 2018), the Court received post-hearing briefs on the motion to suppress evidence (Docs. 24, 26, 27).

On March 1, 2018, the Court held a hearing on Defendant's motion to suppress pretrial voice identifications (Doc. 15). (Min. Entry, Mar. 1, 2018). Again, after the transcript was made available (Doc. 28), and after the Court granted another request from Defendant for an extension of time (Not. Orders, Apr. 12, 2018), the Court received post-

---

[1] The Court received responses in opposition to all motions, *i.e.*, two responses from the Government (Docs. 19, 20) in opposition to Defendant's two motions to suppress, and one response from Defendant (Doc. 21) in opposition to the Government's Rule 404(b) motion. Thereafter, the Court received only one reply (Doc. 22), filed by Defendant in support of the motion to suppress evidence.

[2] The Court was originally scheduled to hear both of Defendant's motions on January 19, 2018, but subsequently granted the Government's unopposed request to bifurcate the hearings, which request was prompted by the unavailability of a witness.

hearing briefs on Defendant's motion to suppress pretrial voice identifications (Docs. 29, 30, 31).  The final post-hearing brief was filed on April 16, 2018.  (Doc. 31).

On June 18, 2018, the Government filed a motion requesting a status conference, *i.e.*, quite literally, a motion requiring a hearing.  (Doc. 32).  In that motion, the Government asserted that "[a]pproximately two weeks remain on the speedy trial clock." (*Id.* at 1).  Accordingly, the Government requested a conference in order "to discuss the speedy trial clock and set the matter for trial."  (*Id.*)  The Court, however, believed the Government's speedy trial computation to be in error and thus intended to set the case for a hearing "to discuss the speedy trial clock…," and, if appropriate, establish a trial calendar, just as the Government had requested.  Accordingly, the time from the filing of the Government's motion through the date of the anticipated hearing was tolled pursuant to 18 U.S.C. § 3161(h)(1)(D).  The Court also considered the appropriate timing of such a hearing and planned to hold the hearing in conjunction with the resolution of Defendant's motions to suppress.  From the Court's perspective, waiting to confer with the parties and establish a trial setting was by far the more efficient and logical approach.  Thus, any delay in the Court setting a hearing to address the Government's motion for status conference did not merely *outweigh* the interests in a speedy trial, but in fact best served those interests.

However, on July 6, 2017, before the Court had an opportunity to schedule a hearing, Defendant filed a motion to dismiss under the Speedy Trial Act.  (Doc. 33).  The Court elected to await full briefing on the motion before setting a hearing, which hearing would not only address Defendant's motion to dismiss (Doc. 33), but may also serve to,

at least partially, address the Government's motion for a status conference (Doc. 32). Based on the Court's standard briefing schedule, the Government's response to Defendant's motion to dismiss was due by July 27, 2018, *i.e.*, twenty-one days after Defendant's motion.[3]  Although this Court had every reason to believe the Government would prepare a response in opposition to the motion, no such response was filed.[4] Regardless, the Court still intended to set the matter for hearing, given that, from the Court's perspective, the parties' speedy trial computation appeared to be in error.

Before the Court scheduled the hearing, however, on August 8, 2018, the Government filed another motion for a status conference.  (Doc. 34).  In this second motion, the Government stated that the conference was necessary "to discuss the speedy trial clock <u>and set the matter for trial</u>."  (*Id.*) (emphasis added).  The Government's contention that the matter should be set for trial was somewhat odd, given the Government's failure to respond to the motion to dismiss.  Adding to the perplexity, the Court also received an email from defense counsel on August 8, 2018, stating that

---

[3] Pursuant to this Court's Criminal Procedures Standing Order, "[a]ll motions shall be briefed according to S.D. Ohio Civ. R. 7.2(a)(2)," which allows twenty-one days for a response in opposition and fourteen days for a reply.  <u>Criminal Procedures Form</u>, Judge Timothy S. Black Standing Orders, available at: http://www.ohsd.uscourts.gov/FPBlack.

[4] Despite the fact that the Government did not file a response, Defendant's motion to dismiss nonetheless tolled time from July 6, 2018 until <u>at least</u> July 27, 2018.  As an initial matter, the hearing on the motion to dismiss had not yet occurred and, therefore, time was tolled regardless. 18 U.S.C. § 3161(h)(1)(D).  Moreover, the Court did not have before it the filings it reasonably expected to receive, nor did the Court have any indication that no filings were forthcoming. Thus, even if the Court had no intention of holding a hearing, the motion was not ripe for decision and could not have been "actually under advisement."  *See* 18 U.S.C. § 3161(h)(1)(H); *Henderson v. United States*, 476 U.S. 321, 329-30 (1986) (the Court "has a motion 'under advisement' … from the time the court receives all the papers it reasonably expects").

defense counsel had discussed the matter with the Government and wondered whether a status conference might be an appropriate next step. In short, Defendant now appeared to join in the Government's request to be heard. All of this only further solidified the Court's need to set the case for hearing. Thus, time was tolled, from the date of the motions—*i.e.*, the Government's first motion for status conference (June 18, 2018), Defendant's motion to dismiss (July 6, 2018), and the Government's second motion for status conference (August 8, 2018)—through the date of the hearing.

Before a hearing was scheduled, on September 20, 2018, Defendant filed a motion for bond. (Doc. 35). The Court once again, in an effort to consolidate any necessary hearings on pending motions, awaited full briefing of the motion before proceeding to select a hearing date.

On October 1, 2018, the Court received the Government's response in opposition to the motion for bond. (Doc. 36). In its response, the Government expressed more firmly the position that the speedy trial clock had not yet run. (*Id.*) In other words, the response to the motion for bond also responded, in part, to the motion to dismiss. Defendant filed his reply on October 18, 2018, after requesting and receiving an extension of time. (Doc. 38). On October 25, 2018 and November 1, 2018, the Court received emails from the Government (with copy to defense counsel), asking that the matter be set for a formal conference with the Court within the next few weeks.

On January 30, 2019, Defendant filed a motion to dismiss under the Sixth Amendment. (Doc. 39). On February 12, 2019, the Government filed its response in opposition (Doc. 41) and Defendant filed a reply on February 26, 2019 (Doc. 41).

On April 15, 2019, the Court held a hearing on Defendant's motion to dismiss under the Speedy Trial Act (Doc. 33), motion for bond (Doc. 35), and motion to dismiss under the Sixth Amendment (Doc. 39). Accordingly, Defendant's motions are now ripe for decision.

## II. STANDARD OF REVIEW

### A. Dismissal for Speedy Trial Act Violations

The Speedy Trial Act provides that, subject to certain periods of exclusion, the trial of a defendant who has pleaded not guilty to a charge in an information or indictment "shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant … [appears before] the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1), (h).

In the event that "a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2). Defendant carries the burden of proof as to the motion. *Id.*

"[I]f a meritorious and timely motion to dismiss is filed, the district court must dismiss the charges, though it may choose whether to dismiss with or without prejudice." *Zedner v. United States*, 547 U.S. 489, 499 (2006). In determining whether to dismiss with or without prejudice, "the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led

to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice."  18 U.S.C. § 3162(a)(2).

### B.  Dismissal for Sixth Amendment Speedy Trial Violation

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial …."  U.S. Const. amend. VI.

To determine whether a defendant has been denied his Sixth Amendment right to a speedy trial, the Court must consider four factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertions of his right; and (4) prejudice to the defendant.  *United States v. Young*, 657 F.3d 408, 414 (6th Cir. 2011) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).  In contrast to the remedies available for violation of the Speedy Trial Act, "the proper remedy for a violation of a defendant's constitutional speedy-trial rights is dismissal of the indictment with prejudice."  *Id.* at 413.

### III.  ANALYSIS

Defendant seeks dismissal of the Indictment with prejudice, arguing that the delay since commencement of this case has violated the Speedy Trial Act and has further deprived him of his Sixth Amendment right to a speedy trial.  (Docs. 33, 39).  Defendant also moves separately for bond.  (Doc. 35).

During the April 15, 2019 motion hearing, the Government made clear its position that the Speedy Trial Act had not been violated and that, in fact, eighteen days remain on the calendar.  (Doc. 42 at 11).  The Government explained that its June 18, 2018 motion for a status conference (Doc. 32) was filed in order to seek specific action from the Court (*i.e.*, establish a calendar in light of what the Government perceived to be a waning

speedy trial clock) and was not a veiled attempt to subvert the Speedy Trial Act. (Doc. 42 at 8-9). However, the Government further argued that, its own intentions aside, the motion for a status conference was nevertheless a pretrial motion that serves to toll time by operation of law. (*Id*.) Finally, the Government argued that the time elapsing from Defendant's motion to dismiss under the Speedy Trial Act, as well as the motions for bond and dismissal under the Sixth Amendment, also tolled time from the dates of filing through the April 15, 2019 hearing. (*Id*. at 10-11).

In response, Defendant argues that the Government's June 18, 2018 motion for a status conference must be interpreted in only one of two ways: (1) as a motion for a continuance; or (2) as a notice to the Court. (*Id*. at 14). However, Defendant asserts that the motion cannot actually be construed as a motion for a continuance, given that the Government made no such request nor indicated any need for additional time. (*Id*. at 15-16). Therefore, of the two options, Defendant argues that the Court should construe the Government's motion as merely a notice of the waning speedy trial clock, rather than a motion "legitimately seeking some sort of relief from the Court." (*Id*. at 15). Accordingly, Defendant asserts that the motion cannot serve to toll time. (*Id*. at 16).

As stated more fully below, the Court finds no violation of the Speedy Trial Act and, therefore, neither dismissal nor bond are warranted. Moreover, the Court finds that there has been no violation of Defendant's Sixth Amendment right to a speedy trial.

## A. The Speedy Trial Act

The Speedy Trial Act requires that trial commence within seventy-days of either the filing of the indictment or a defendant's initial appearance, whichever occurs later.

18 U.S.C. § 3161(c)(1).  However, the Act excludes certain periods of time from that

seventy-day computation.  18 U.S.C. § 3161(h).

> Some of these delays are excludable only if the district court
> makes certain findings enumerated in the statute[, pursuant to
> 18 U.S.C.] § 3161(h)(7).  Other delays are automatically
> excludable, *i.e.,* they may be excluded without district court
> findings.  …  [S]ubsection (h)(1) requires the automatic
> exclusion of 'any period of delay resulting from other
> proceedings concerning the defendant, including but not
> limited to' periods of delay resulting from [(h)(1)'s] eight
> enumerated subcategories of proceedings.

*Bloate v. United States*, 559 U.S. 196, 203 (2010).

Relevant here, 18 U.S.C. § 3161(h)(1)(D) provides for the automatic exclusion of

"delay resulting from any pretrial motion, from the filing of the motion through the

conclusion of the hearing on, or other prompt disposition of, such motion…."  Notably,

"the phrase 'or other prompt disposition' … does not imply that only 'reasonably

necessary' delays may be excluded between the time of filing of a motion and the

conclusion of the hearing thereon."  *Henderson v. United States*, 476 U.S. 321, 329-30

(1986).  Further, "the filing of a pretrial motion falls within [(h)(1)'s automatic exclusion]

provision irrespective of whether it actually causes, or is expected to cause, delay in

starting a trial."  *United States v. Tinklenberg*, 563 U.S. 647, 650 (2011).

Also relevant is 18 U.S.C. § 3161(h)(1)(H), which provides for the automatic

exclusion of "delay reasonably attributable to any period, not to exceed thirty days,

during which any proceeding concerning the defendant is actually under advisement by

the court."  The Court "has a motion 'under advisement' … from the time the court

receives all the papers it reasonably expects[.]"  *Henderson*, 476 U.S. at 329.

*1. The Government's Rule 404(b) Motion Remains Pending*

Here, the Court finds that the speedy trial clock has been tolled since **June 16, 2017**, as the Government's motion *in limine* to admit Rule 404(b) evidence (Doc. 17) remains pending and is neither ripe for consideration yet, nor has a hearing occurred. Based on this computation, only **twenty days** have run against the clock.

First, the Court notes Defendant's contention that the Government's motion *in limine* does not require a hearing. (Doc. 33 at 4). The Court, however, rejects the notion that the parties determine what motions the Court hears. Whether a hearing is helpful or necessary is a matter for the Court to decide, not the parties. And, indeed, this Court always schedules motions *in limine* for hearing and fully intended to do so in this case.

Moreover, a motion *in limine* is a pre-trial motion seeking a the Court's ruling on the admissibility of evidence, which ruling "[t]he parties may then consider … when formulating their trial strategy." *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983). In other words, a motion *in limine* is a pre-trial motion that anticipates actually proceeding to trial.

It is, therefore, illogical for the Court to take a motion *in limine* under advisement before it is reasonably certain that the case will actually proceed to trial. This is particularly true when the Court also has pending before it two unresolved motions to suppress, either of which could significantly alter the course of the proceedings. For instance, should the Court grant either of the motions to suppress, the Government may determine that it lacks sufficient evidence to proceed to trial or, at the very least, that the risk of going to trial with a weaker case warrants conceding to a favorable plea deal.

Conversely, if the Court denies the motions to suppress, Defendant may conclude that the risk of going to trial is too great and that accepting a plea is the safer option. Under either scenario, a ruling on the motion *in limine* would never be necessary. Requiring the Court to take the motion under advisement prematurely serves only to impose upon the Court's already severely limited time and resources. Such a burden, in and of itself, undermines the purpose of the Speedy Trial Act. *See Tinklenberg*, 563 U.S. at 657.[5]

Accordingly, even assuming that the Court had no intention of holding a hearing on the Government's motion *in limine*, the motion is not "<u>actually</u> under advisement" of the Court until Defendant's motions to suppress are resolved and the parties confirm that trial is imminent. 18 U.S.C. § 3161(h)(1)(H) (emphasis added).

However, in this case, the Court fully intended (and still intends, at the appropriate time) to hold a hearing on the Government's motion *in limine* and, accordingly, time continues to toll pursuant to 18 U.S.C. § 3161(h)(1)(D).

---

[5] In *Tinklenberg*, the Supreme Court held that 18 U.S.C. § 3161(h)(1)(D)'s automatic exclusion applies to <u>any</u> pretrial motions, irrespective of whether the motion caused or was expected to cause actual delay of the trial. 563 U.S. at 650. The Supreme Court explained that its holding was consistent with virtually all lower courts and that the interpretation by "the lower courts about the meaning of a statute of great practical administrative importance in the daily working lives of busy trial judges is itself entitled to strong consideration[.]" *Id*. at 657. Moreover, the Supreme Court rejected the 'actual delay' approach, noting that such an "interpretation would make the subparagraph (D) exclusion significantly more difficult to administer. And in doing so, it would significantly hinder the Speedy Trial Act's efforts to secure fair and efficient criminal trial proceedings." *Id*. (citing H.R.Rep. No. 93–1508, p. 15 (1974) ("the Act seeks to achieve 'efficiency in the processing of cases which is commensurate with due process'")).

## 2. *The Government's June 18, 2018 Motion Tolled Time*

Even absent the Government's motion *in limine*, the Court finds that there are still **eighteen days** remaining on the speedy trial clock, as time tolled on June 18, 2018, when the Government filed its motion for a status conference.

As previously stated, *supra*, the first day to actually run against the speedy trial clock was February 11, 2017, and time then continued to run until March 2, 2017. In total, **twenty days** ran against the speedy trial clock during this time, *i.e.*, February 11, 2017 to March 2, 2017.

Thereafter, the Court's March 3 and May 1, 2017 ends-of-justice findings tolled time until the motion filing deadline of June 16, 2017. 18 U.S.C. § 3161(h)(7)(A), (B)(iv). As of June 16, 2017, time was tolled by the three pending motions: Defendant's motion to suppress pretrial voice identifications (Doc. 15); Defendant's motion to suppress evidence (Doc. 16); and the Government's motion to admit Rule 404(b) evidence (Doc. 17). 18 U.S.C. § 3161(h)(1)(D).

Even excluding the Government motion *in limine*, it is undisputed that Defendant's motions continued to toll time from June 16, 2017 through the date of the hearings and the post-hearings briefs, the last of which was filed on April 16, 2018 (Doc. 31). (Doc. 33 at 4-5) ("Mr. Felix acknowledges that because the Speedy Trial Act excludes delay resulting from pretrial motions, the motions filed in this case tolled the clock from June 16, 2017 until April 16, 2018") (citing 18 U.S.C. § 3161(h)(1)(D)). Moreover, provided that as of April 16, 2018, the Court had received all information necessary to resolve the motions, the thirty-day advisement period began to run on April

17, 2018 and thus expired on May 16, 2018.  Accordingly, time would have started

running again on May 17, 2018, constituting day **twenty-one** on the speedy trial clock.

However, the Government's June 18, 2018 motion stopped the clock again, such

that the last day to run was June 17, 2018, *i.e.*, day **fifty-two** on the speedy trial clock.

The Court rejects Defendant's argument that the Government's motion must be

interpreted as either a motion to continue or a mere notice regarding the speedy trial

computation.  The notion that the Government's pretrial motion would not serve to toll

time unless it was a motion for a continuance is patently false.  Indeed, "the filing of a

pretrial motion falls within [(h)(1)'s automatic exclusion] provision <u>irrespective of

whether it actually causes, or is expected to cause, delay in starting a trial</u>." *Tinklenberg*,

563 U.S. at 650 (emphasis added).  And, as Defendant admitted during the hearing,

nothing about the Government's motion implies that a continuance was sought.  Thus,

Defendant's assertion that the Court must interpret the motion as a request for a

continuance is without merit.

Also without merit is Defendant's position that the Court should treat the

Government's motion as a mere notice.  The Government's motion expressly requests a

conference with the Court in order to address the speedy trial computation and to

establish a trial calendar.  Thus, the motion is a specific request for action from the Court,

which request, by its very terms, requires a hearing.  Moreover, as the Court previously

noted, the Government's motion also set forth a rough estimation of remaining speedy

trial time, which calculation was inconsistent with what the Court perceived.  Thus, even

if the Government had not requested a hearing, the motion nonetheless gave rise to <u>the Court's need for a hearing</u> to address the issue.

The Court further rejects any assertion that the Government's motion was a pretext to toll speedy trial time. Indeed, the Government, to its credit, readily admits that it did not intend to toll speedy trial time. Regardless, a party's intent does not override the operation of law. *See* 18 U.S.C. § 3161(h) ("The following periods of delay **shall** be excluded … in computing the time within which the trial … must commence") (emphasis added); *see also Zedner*, 547 U.S. at 500-09 (holding that exclusion of time for a continuance requires a court's ends-of-justice finding, and a defendant cannot waive application of the Speedy Trial Act, "because there are many cases … in which the prosecution, the defense, and the court would all be happy to opt out of the Act, to the detriment of the public interest").

Ultimately, the Government's June 18, 2018 motion for a status conference was a pretrial motion and, as the Speedy Trial Act clearly states, "delay resulting from **any** pretrial motion, from the filing of the motion through … [its] prompt disposition," is automatically excludable. 18 U.S.C. § 3161(h)(1)(D) (emphasis added); *see also Tinklenberg*, 563 U.S. at 657-58 (rejecting an interpretation of (h)(1)(D) that would require a motion-by-motion determination as to which motions should exclude time and which should not, as such an approach would require "considerable time and judicial effort … [as well as] the use of various presumptions," and would "significantly limit the premise of 'automatic application' upon which [(h)(1)(D)] rests"). Accordingly, the Government's motion served to toll time starting on June 18, 2018.

Less than three weeks later, on July 6, 2018, Defendant filed his motion to dismiss under the Speedy Trial Act. (Doc. 33). Because that motion required a hearing, which hearing took place on April 15, 2019, the time elapsing from the filing of the motion through the conclusion of the hearing is tolled pursuant to 18 U.S.C. § 3161(h)(1)(D).[6] The same is true of Defendant's subsequently filed motions, as explained, *supra*.

Accordingly, the Court finds that the speedy trial clock has not run in the instant case. In the first instance, by this Court's computation, only **twenty days** have run on the speedy trial clock to date, based on the Government's pending motion *in limine*. (Doc. 17); 18 U.S.C. § 3161(h)(1)(D). However, even if the Court were to exclude consideration of the Government's motion entirely, only **fifty-two days** have run on the speedy trial clock.

Under either computation, there is no violation of the Speedy Trial Act, and Defendant's motion to dismiss is therefore denied. (Doc. 33).

---

[6] The Court rejects Defendant's attempt to undermine the need for the hearing. Defendant argues that the hearing is merely the Government's way of "provid[ing] a convenient mechanism whereby the Court could sidestep the requirements of the Speedy Trial Act." (Doc. 38 at 1-2). This is untrue. As this Court has explained, every filing and interaction with the parties only further emphasized the need for the hearing. The Court never denied any request for a hearing and indeed indicated on at least two separate occasions that it intended to schedule a hearing in this case. Moreover, even defense counsel, by email, indicated in August 2018 that a conference may be warranted. Yet Defendant now attempts to call into question the sincerity of the hearing, couching it as nothing more than a pretext suggested by the Government and put on by the Court to circumvent speedy trial. (*Id.*) This assertion is absolutely false. The Court intended to set the case for a hearing to address speedy trial upon the Government's June 2018 motion. Thereafter, Defendant's motion to dismiss on speedy trial grounds became the Court's focus for purposes of the hearing. Later, as Defendant's related motions trickled in weeks apart, the Court awaited briefing in order to address all related motions simultaneously. The Court's intent to hold a hearing is not eviscerated simply because the Court did not expressly and immediately declare it.

**B. Motion for Bond**

Defendant's motion for bond is brought under 18 U.S.C. § 3164, which requires the release of a pretrial detainee held in custody longer than 90 days, excepting any excluded days under the Speedy Trial Act. Having found that, at most, no more than fifty-two days have expired, Defendant's motion for bond is denied. (Doc. 35).

**C. Sixth Amendment Right to a Speedy Trial**

Finally, Defendant moves for dismissal, arguing that he has been denied a speedy trial under the Sixth Amendment. (Doc. 39).

To determine whether Defendant has been deprived of his Sixth Amendment right to a speedy trial, the Court must consider: (1) the length of delay; (2) the reason for the delay; (3) Defendant's assertion of his right; and (4) prejudice to Defendant. *Barker*, 407 U.S. at 530. No one factor is a "necessary or sufficient condition to the finding of a deprivation of the right of speedy trial … [but] [r]ather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533.

As to the **first** factor, the length of the delay serves as a "triggering mechanism" and, if the length is not "presumptively prejudicial," the Court is not required to undertake the remainder of *Barker* analysis. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992); *Barker*, 407 U.S. at 530–31. "[B]ecause of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530. The Sixth Circuit has held "delays over one year are 'uncommonly long.'" *United States v. Baugh*, 605 F. App'x 488, 491 (6th Cir. 2015) (citing *United States v. Bass,* 460 F.3d

830, 836 (6th Cir. 2006)).  However, "in calculating the length of the delay, only those periods of delay attributable to the government or the court are relevant to [Defendant's] constitutional claim."  *United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000).

Here, excluding the delay attributable to Defendant, the Court finds that the length of the delay falls short of the one-year threshold and is not otherwise presumptively prejudicial under the circumstances of this case.

It is without question that any delay from the commencement of the case through May 16, 2018 (*i.e.*, the expiration of the advisement period for the motions to suppress) is attributable to Defendant.  Defendant was arrested on Saturday, February 4, 2017.  (Doc. 11).  His initial appearance was held, without delay, on the first available court date, Monday, February 6, 2017.  (Doc. 6).  Defendant's detention hearing and arraignment were held just three days later, on February 9, 2017.  (Doc. 10).  The very next day, this Court held his preliminary pretrial conference and established a trial calendar.  (Doc. 13). Thereafter, as fully detailed, *supra*, every day of delay up to May 16, 2018 was the direct result of Defendant's numerous requests for continuances and extensions of time and the resolution of Defendant's pretrial motions to suppress.

From May 16, 2018 to the date of this Order, excluding the time attributable just to briefing and ruling on Defendant's motions to dismiss and motion for bond (*i.e.*, 87 days), only nine months have elapsed.[7]  This delay does not trigger a full *Barker* analysis.

---

[7] The Court's calculation of 87 days attributable to Defendant includes: Defendant's motion to dismiss under the Speedy Trial Act (approximately 30 days for ruling attributable to Defendant); Defendant's motion for bond (29 days for briefing attributable to Defendant); and Defendant's motion to dismiss under the Sixth Amendment (28 days for briefing attributable to Defendant).

However, even assuming *arguendo* that the delay was presumptively prejudicial, based on a *Barker* analysis, this Court finds no Sixth Amendment violation has occurred.

Specifically, the **second** factor under *Barker* questions the reason for the delay. The United States Supreme Court has made clear that "different weights are to be assigned to different reasons for delay." *Doggett*, 505 U.S. at 657. At its core, this factor seeks to determine "whether the government or the criminal defendant is more to blame for th[e] delay." *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (quoting *Doggett*, 505 U.S. at 651).

As the Supreme Court explained in *Barker*:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531. Naturally, "delay caused by the defense weighs against the defendant," which includes delay attributable to defense counsel. *Brillon*, 556 U.S. at 90-91 (citing *Coleman v. Thompson,* 501 U.S. 722, 753 (1991)).

The initial delay in this case until June 16, 2017 is attributable to Defendant's requests for additional time to review discovery and prepare pretrial motions. Thereafter, the delay until May 16, 2018 is attributable to Defendant's own pretrial motions, which were filed and briefed on Defendant's requested schedule, after the Court granted

Defendant's requested continuances. Moreover, since July 6, 2018, approximately three months of delay are attributable to Defendant's three subsequent motions.

Of the remaining nine months, this Court can attribute only a small fraction directly to the Government, and only on the basis of the Government's motion for a status conference and initial failure to file a response to Defendant's motion to dismiss. However, neither of these instances were deliberate attempts by the Government to cause delay. And, indeed, both instances are overwhelmingly offset by the Government's repeated good-faith efforts to obtain a conference with the Court, all of which demonstrate that the Government was not in any sense attempting to delay the trial or hamper the defense. Indeed, the Government's motion for a status conference was, quite literally, an attempt by the Government to <u>obtain</u> a trial setting, not delay it.

Moreover, the delay between May 16, 2018 and June 16, 2018 was not the result of the Court's oversight or negligence. Rather, the Court was working diligently to resolve Defendant's pending motions to suppress, both of which simply required more time than the mere 30-days allotted.[8] The filing of Defendant's July 6, 2018 motion to dismiss prompted the Court to defer resolution of the motions to suppress, pending the

---

[8] For example, the Court was required to consider an audio recording submitted by both parties as an exhibit relating to Defendant's motion to suppress evidence. Although the recording was two hours in length, the manner and flow of the conversation made it excruciatingly difficult to follow and often required the Court to re-play large segments over and over again. Indeed, the Court, on a number of occasions, contemplated ordering the parties to produce a transcript of the recording. However, having dedicated extensive time to the recording, and recognizing that the preparation of a transcript would only further delay the proceedings, the Court, in an apparently ironic attempt to *save* the parties time and effort, opted to push through on its own. The Court did not perceive the additional time necessary to resolve the motion as posing a speedy trial issue, given the Court's own computation of the clock.

outcome of the motion to dismiss.  Indeed, if the motion to dismiss were granted, it would obviate the need to resolve the motion to suppress.  Thus, while Defendant faults the Court for leaving the motions to suppress pending, the Court made a deliberate decision to defer its ruling, which decision was entirely appropriate under the circumstances.  And at no point did the Court have a duty to inform Defendant of the Court's rationale for doing so, nor would any such notice have impacted the Court's decision.  Thus, Defendant's characterization of the Court allegedly leaving his motions to languish and ignoring the parties without explanation is entirely baseless.

Regardless, even if the entirety of the nine, notably non-consecutive, months were attributable to the Court, the reason would be neutral or, at best, only slightly weigh against the Government.  *See Barker*, 407 U.S. at 531.  However, as previously indicated, the Government's sincere attempts to secure a conference with the Court, coupled with even defense counsel's acknowledgement in August 2018 that a conference may be fruitful, and the Court's attempts to consolidate the hearings on Defendant's constant motion practice, all render the reason for the delay as neutral.  In other words, on the facts, this Court cannot find that the Government "is more to blame" for the delay.  *See Brillon*, 556 U.S. at 90.

The **third** factor is Defendant's assertion of his right.  "Whether and how a defendant asserts his right is closely related to the other factors," in that "[t]he strength of [a defendant's] efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences."  *Barker*, 407 U.S. at 531.  Stated simply, "[t]he

more serious the deprivation, the more likely a defendant is to complain." *Id*. Thus, the Supreme Court has "emphasize[d] that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id*. at 532.

Here, Defendant's only assertion of his right to a speedy trial arises from the filing of his motions to dismiss. Indeed, quite the contrary to asserting his right to a speedy trial, Defendant had sought numerous continuances and extensions of time. And while the Court has received inquiries regarding a hearing from the Government, Defendant has made no such request, save for once acknowledging that a conference may be helpful.

That said, Defendant did promptly file the motion to dismiss when, by his computation, time had run.

Accordingly, in considering the facts and circumstances of this case, the Court finds that the third factor neither weighs in favor of nor against Defendant.

Finally, the **fourth** factor is any resulting prejudice to Defendant. In *Barker*, the Supreme Court explained that:

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect … [including]: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Barker*, 407 U.S. at 532.

Notably, "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 656. The Sixth Circuit has elaborated,

however, that "[i]n this circuit, '[w]hen the government prosecutes a case with reasonable diligence, a defendant who cannot demonstrate how his defense was prejudiced *with specificity* will not make out a speedy trial claim no matter how great the ensuing delay.'" *Young*, 657 F.3d at 418 (quoting *United States v. Howard,* 218 F.3d 556, 564 (6th Cir. 2000)) (emphasis in original); *see also United States v. Robinson*, 455 F.3d 602, 608 (6th Cir. 2006) (noting that, in the absence of particularized trial prejudice, "[s]horter delays [(*e.g.*, thirteen and one-half months versus six-years)] attributable to the government's negligence have been held not to give rise to a presumption of prejudice").

Here, Defendant argues that he has suffered both trial and non-trial prejudice. Specifically, Defendant asserts non-trial prejudice arising from his continued incarceration. Pretrial detention is a significant deprivation to any defendant. The Court agrees the delay has contributed to Defendant's non-trial prejudice.

Defendant further argues that he has suffered trial prejudice, asserting that a key defense witness has gone missing. However, as the Court came to learn during the hearing, Defendant had only maintained contact with his "critical witness" around the time the Indictment was filed (February 2017). Thereafter, defense came to learn the witness was allegedly missing in July 2018. So, as an initial matter, the delay at issue here, *i.e.*, after June 2018, cannot be the cause of Defendant's missing witness.

More significantly, however, following the hearing, the Government emailed the Court and defense counsel and provided current contact information for Defendant's witness. Specifically, within a matter of hours, the Special Agent, utilizing the same

database as the defense, had located and contacted the witness, who indicated she was available to the defense any time by telephone.

Accordingly, Defendant's allegations of trial prejudice are entirely without merit. And as non-trial prejudice carries less weight than trial prejudice, the Court deems this fourth factor as weighing neither in favor of nor against either party.

Having considered each of the *Barker* factors, the Court finds the delay has not deprived Defendant of his constitutional right to a speedy trial. Accordingly, dismissal under the Sixth Amendment is not warranted.

## IV. CONCLUSION

Based upon the foregoing, Defendant's motion to dismiss under the Speedy Trial Act (Doc. 33), motion for bond (Doc. 35), and motion to dismiss under the Sixth Amendment (Doc. 39) are **DENIED**.

**IT IS SO ORDERED.**

Date: May 8, 2019

Timothy S. Black
United States District Judge